1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

9
10

| | |
|---|---|
| CATHERINE MENDEZ, et al., | Case No. EDCV 22-00452 AB (RAO) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE [32][42]** |
| COUNTY OF RIVERSIDE, et al., | |
| Defendants. | |

    This Report and Recommendation is submitted to the Honorable André Birotte Jr., United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.    INTRODUCTION

    Catherine Mendez ("Mendez"), Jamari Carter ("Carter"), and Chasity Doll ("Doll") (collectively, "Plaintiffs"), proceeding *pro se* and *in forma pauperis*, initiated this action on March 14, 2022.  Plaintiffs filed the Second Amended Complaint ("SAC"), the operative complaint, on May 27, 2022.  Dkt. No. 13.  The SAC is brought against the County of Riverside (the "County"), Officer Monges ("Monges"), Officer Bodnar ("Bodnar"), Officer Herwerk ("Herwerk"), and Officer Rodriguez ("Rodriguez") (collectively, "Defendants").  *Id.*  Plaintiffs bring claims

pursuant to 42 U.S.C. § 1983 for unlawful search and seizure under the Fourth Amendment and violation of the Equal Protection Clause under the Fourteenth Amendment.  *See id.*

Plaintiffs and Defendants move for summary judgment.  Dkt. Nos. 32, 42. Plaintiffs filed their Motion for Summary Judgment ("MSJ") on March 20, 2023. Dkt. No. 32 ("Pls. MSJ").  Plaintiffs' MSJ is supported by a Memorandum of Points and Authorities, Dkt. No. 33 ("Pls. MPA"), and a declaration, Dkt. No. 34 ("Pls. Decl.").  On June 30, 2023, Plaintiffs filed a further Memorandum of Points and Authorities in support of their MSJ.  Dkt. No. 54 ("Pls. Further MPA").  Defendants filed their Opposition to Plaintiffs' MSJ on August 29, 2023.  Dkt. No. 67 ("Defs. Opp'n").  Plaintiffs did not file a reply.

Defendants filed their MSJ on June 30, 2023.  Dkt. No. 42 ("Defs. MSJ"). Defendants' MSJ is supported by: a Statement of Uncontroverted Facts ("SUF"), Dkt. No. 43; the Declaration of Bo Herwerk ("Herwerk Declaration"), Dkt. No. 44; the Declaration of John Monges ("Monges Declaration"), Dkt. No. 45;[1] the Declaration of Jonathan Bodnar ("Bodnar Declaration"), Dkt. No. 46; the Declaration of Mark Rodriguez ("Rodriguez Declaration"), Dkt. No. 47; the Declaration of Ryan Powers ("Powers Declaration"), Dkt. No. 48; and the Declaration of Bruce E. Disenhouse ("Disenhouse Declaration"), Dkt. No. 49.  The Disenhouse Declaration also includes an Appendix of Exhibits and attaches exhibits.  *See* Dkt. No. 49. Defendants have manually lodged Exhibits C, N, and V, which are video files.  Dkt. No. 56.  Defendants also filed a Request for Judicial Notice.  Dkt. No. 52.  Plaintiffs filed their Opposition to Defendants' MSJ on July 28, 2023.  Dkt. No. 63 ("Pls. Opp'n").  Defendants filed their Reply on August 2, 2023.  Dkt. No. 64 ("Defs. Reply").

---

[1] Defendants filed a Notice of Errata regarding the Monges Declaration, correcting a reference to an exhibit.  Dkt. No. 51.

2

1    Plaintiffs were provided a *Rand*[2] notice.  Dkt. No. 68.[3]

2    Both motions now stand submitted.  For the reasons set forth below, the Court

3    recommends that Plaintiffs' MSJ be denied and that Defendants' MSJ be granted.

4    ## II.    LEGAL STANDARD FOR RULE 56 MOTIONS

5    Summary judgment is warranted when "the movant shows that there is no

6    genuine dispute as to any material fact and the movant is entitled to judgment as a

7    matter of law."  Fed. R. Civ. P. 56(a).  An issue is "genuine" only if a sufficient

8    evidentiary basis exists upon which a reasonable jury could find for the nonmoving

9    party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  A factual

10   dispute is "material" only if it might affect the outcome of the suit under governing

11   law.  *Id.* at 248.

12   The moving party bears the initial responsibility of presenting the basis of its

13   motion and identifying those portions of the record, together with affidavits, that it

14   believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*

15   *v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets its initial burden,

16   the burden shifts to the opposing party to demonstrate the existence of a genuine issue

17   of material fact with specific facts.  *Anderson*, 477 U.S. at 248-49.  The parties must

18   support their assertions that a material fact cannot be or is genuinely disputed by (1)

19   citing materials in the record, (2) showing that materials cited do not establish an

20   absence or presence of genuine dispute, or (3) showing that the adverse party lacks

21   admissible evidence to support its factual position.  *See* Fed. R. Civ. P. 56(c)(1)(A)-

22   (B).  A party may also object to material cited on the basis that it "cannot be presented

23   _____

[2] *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).

24   [3] After Defendants' MSJ was filed, the Court issued a *Rand* notice and set a briefing

25   schedule.  Dkt. No. 55.  However, the Court later issued a Notice of Clerical Error as
     to this notice because it conflicted with a prior order regarding the briefing schedule.

26   *See* Dkt. Nos. 57, 36.  The Court thereafter set a briefing schedule on Defendants'
     MSJ but did not reissue the *Rand* notice.  Dkt. No. 65.  On September 25, 2023, the

27   Court reissued the *Rand* notice and provided Plaintiffs with another opportunity to

28   supplement their opposition with further evidentiary support.  Dkt. No. 68.

in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). An opposing party cannot rely on the "mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252.

In considering a motion for summary judgment, the Court must examine all the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Id.* at 255. In resolving cross-motions for summary judgment, the Court must consider each party's evidence. *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011). The Court does not make credibility determinations, nor does it weigh conflicting evidence. *Anderson*, 477 U.S. at 255. But "[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

## III.   EVIDENCE SUBMITTED BY THE PARTIES

In deciding the cross-summary judgment motions, the Court will consider only factual assertions that are properly supported in accordance with the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 56(c)(1). The Court may consider only admissible evidence in ruling on a summary judgment motion. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The Court is concerned with the admissibility of relevant facts, not the form presented in a motion. *See* Fed. R. Civ. P. 56(c)(2) (permitting a party to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"). However, the Ninth Circuit has "repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988) (internal quotation marks omitted).

"In general, inadmissible hearsay evidence may not be considered on a motion for summary judgment." *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 345 n.4 (9th Cir. 1995). However, "a district court may consider hearsay

evidence submitted in an admissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as live testimony." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016). Courts generally require some sort of showing that a party would be able to submit the hearsay evidence in an admissible form at trial. *See, e.g.*, *Garris v. Fed. Bureau of Investigation*, 937 F.3d 1284, 1293 (9th Cir. 2019) (finding district court did not abuse its discretion in overruling hearsay objections where the defendant certified at a hearing that it would be able to submit the hearsay evidence in an admissible form at trial).

"[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). "[S]tatements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not *facts* and likewise will not be considered on a motion for summary judgment." (emphasis in original)). *Id.*

## A.  Evidence Submitted by Plaintiffs

Plaintiffs did not submit any admissible evidence or facts in support of their MSJ with respect to the incidents underlying their claims. Although Plaintiffs submit a declaration in support of their MSJ, the only fact it contains is that Plaintiffs discussed the MSJ with opposing counsel.[4]  *See* Pls. Decl.

Plaintiffs attach two exhibits to their Opposition. Pls. Opp'n at 6-7. The Court will consider the first exhibit, a letter granting an extension to file discovery responses, *see id.* at 6, because Defendants do not object to the exhibit or deny that their counsel sent the letter. The second exhibit is a printout. *See id.* at 7. Because Plaintiffs have not laid any foundation for this exhibit, the Court will not consider it.

---

[4] Because Plaintiffs did not fill in a date, it is not clear if any discussion took place.

Additionally, because Plaintiffs did not sign the SAC or the MSJ briefing under penalty of perjury, the Court will not consider any facts within these documents as evidence. *See* Dkt. Nos. 13, 33, 54, 63.

The Court notes that Plaintiffs have had ample opportunity to support their MSJ and oppose Defendants' MSJ with evidence. On April 4, 2023, the Court stated that it would set an opposition deadline after it resolved a motion to compel so that Plaintiffs could use any compelled evidence to oppose the MSJ. *See* Dkt. No. 36. After Defendants filed their MSJ, the Court issued a *Rand* notice on July 5, 2023. Dkt. No. 55. Because the July 5, 2023 notice set a briefing schedule that was inconsistent with the Court's April 4, 2023 order, a Notice of Clerical Error instructed Plaintiffs to disregard the July 5, 2023 notice. Dkt. No. 57. However, it appears that Plaintiffs did not disregard the July 5, 2023 notice because they filed their Opposition according to the deadline set by that notice. *See* Dkt. Nos. 55, 63. After the Court granted Plaintiffs' motion to compel, the Court gave Plaintiffs an opportunity to file a supplement brief to their Opposition. Dkt. No. 65. Plaintiffs did not file a supplemental brief. In light of the confusion that may have arisen out of the July 5, 2023 notice and subsequent Notice of Clerical Error, the Court issued another *Rand* notice on September 25, 2023. Dkt. No. 68. The September 25, 2023 notice provided Plaintiffs with the opportunity to file supplemental briefing and/or evidence "[t]o the extent Plaintiffs would like to supplement their opposition to Defendants' motion for summary judgment with any further evidentiary support after reviewing the [*Rand*] notice." *Id.* Plaintiffs did not file any supplemental briefing or evidence. Thus, Plaintiffs were provided sufficient notice that summary judgment may be entered against them if they did not submit adequate evidence in opposition.

**B.    Evidence Submitted by Defendants**

Defendants submit six declarations. *See* Dkt. Nos. 44-49. These declarations comply with 28 U.S.C. § 1746 and may be considered to the extent that they are based on personal knowledge and set forth facts and evidence that are otherwise

admissible.[5]   *See* Fed. R. Civ. P. 56(c)(4).   Defendants also attach a number of exhibits.  *See* Dkt. No. 49.  These exhibits are properly authenticated by the declarants or are subject to judicial notice.  *See* Dkt. Nos. 44-49, 52.

Defendants also submit Carter and Doll's responses to requests for admission.  *See* Defs. Exs. G, I, K, M, P, R, T.  Defendants argue that because Carter and Doll's responses were untimely, they should be deemed admitted.  Defs. MSJ at 10.  Plaintiffs respond that Mendez requested an extension to respond to discovery and that the extension was granted.  Pls. Opp'n at 2.  Plaintiffs contend that the responses were therefore not untimely and should not be admitted.  *Id.*  Defendants do not dispute that Mendez requested and was granted an extension of time to provide responses to discovery requests.  *See* Defs. Reply at 4-5.  Defendants do not argue that Mendez's responses were untimely.  *See id.*  However, Defendants argue that because Mendez could not request an extension on behalf of Carter and Doll, Carter and Doll's responses, which were provided on the same date as the deadline for Mendez's responses, were untimely and therefore deemed admitted.

The Court construes Plaintiffs' argument as a motion to withdraw any admissions.  Under Federal Rule of Civil Procedure 36(b), the court may permit withdrawal of admissions "if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits."  Fed. R. Civ. P. 36(b).  The Court finds good cause to excuse the untimeliness of Carter and Doll's responses and permits the admissions to be withdrawn.  In light of Plaintiffs' *pro se* status, they likely did not understand that Carter and Doll had to separately ask for extensions of time to respond to the requests for admission.  Because Defendants' counsel agreed

---

[5] Two of the declarations include the month and year but not the day of signing.  *See* Rodriguez Decl.; Powers Decl.  District courts have found that including the month and year of signing is sufficient to satisfy the date requirement of 28 U.S.C. § 1746.  *See Chao v. Westside Drywall, Inc.*, 709 F. Supp. 2d 1037, 1052 (D. Or. 2010) (citing *Pieszak v. Glendale Adventist Med. Ctr.*, 112 F. Supp. 2d 970, 999 (C.D. Cal. 2000)).

to Mendez's request for an extension, Plaintiffs mistakenly believed that the extension applied to all of them. *See* Pls. Opp'n at 2. This is not a situation where a party failed to respond to requests for admission or provided untimely responses without attempting to request an extension or after having been refused an extension. Upholding the admissions would practically eliminate any presentation of the merits of the case. *See* Defs. Exs. G, I, K, M, P, R, T. The Court finds that Defendants would not suffer significant, if any, prejudice. Defendants agreed to extend the deadline for Mendez's responses and Carter and Doll's responses were provided on the same date that Mendez's responses were due. *See id.* Defendants do not claim that they would have defended the action differently had they known that the admissions would be withdrawn. Defendants have submitted and relied upon other evidence in their MSJs. Thus, the Court will not deem as admitted the requests for admission propounded to Carter and Doll.

## IV.   <u>FACTS</u>[6]

### A.   August 19, 2020 Incident

On August 19, 2020, Monges received a call concerning a fight at 54160 Kalsman Drive, Whitewater, California. SUF 3. Monges activated his Body Worn Camera (BWC) upon arrival. SUF 4. The BWC recorded the entire investigation and interactions with Plaintiffs and their neighbors. SUF 5. The investigation revealed that Carter was throwing rocks at his neighbor's vehicle and residence, and the neighbor was playing music loudly during quiet hours. SUF 9. Monges counseled Plaintiffs and their neighbors about getting restraining orders. SUF 7. Carter and his neighbor declined to press charges against each other. SUF 8.

///

---

[6] Plaintiffs did not file a statement of genuine disputes, nor did Plaintiffs submit any admissible evidence or facts to refute Defendants' SUF, except as to the requests for admission. Thus, the Court considers Defendants' SUF as undisputed, except as to those facts that rely on Carter and Doll's failure to provide timely responses to Defendants' requests for admission. *See supra*, Section III.B.

On January 12, 2021, Carter changed his mind and indicated that he wanted to press charges against his neighbor for assault.  SUF 10.  Monges never received the supplemental report from January 12, 2021.  SUF 11.  On July 15, 2021, Carter notified Monges of his intent to press charges.  SUF 12.  Later that day, Monges prepared and executed a declaration in support of an arrest warrant against the neighbor.  SUF 13.  The declaration was transmitted to the District Attorney's office that same day.  SUF 14.

**B.     March 30, 2021 Incident**

On March 30, 2021, Bodnar was on patrol in the Cabezon area.  SUF 46.  Bodnar received a radio call from a code enforcement officer that a Black male driving a dark grey Nissan Armada had a firearm in his hand.  SUF 47.  Bodnar observed the car and began following it.  SUF 48.  The car passed a truck across double lines.  SUF 49.  Bodnar commenced a traffic stop.  SUF 50.  Because the code enforcement officer reported a firearm, Bodnar requested backup.  SUF 51.  Rodriguez and Herwerk arrived as backup.  SUF 52.  Bodnar, Rodriguez, and Herwerk exited their marked police vehicles and drew their firearms.  SUF 53.  Bodnar issued commands to the driver.  SUF 54.  Carter initially did not comply with orders.  SUF 55.  Carter eventually exited the vehicle with a cellphone in his hand.  SUF 56.  The deputies recognized it as a cellphone and ordered Carter to put it down.  SUF 57.  Carter complied.  SUF 58.  Bodnar then recognized Carter from prior dealings and ordered the other deputies to put their guns down.  SUF 59.  As a safety precaution and pursuant to the information given to them of a firearm being present, the deputies requested and obtained permission from Carter to do a pat down search of Carter and a search of his vehicle for firearms.  SUF 60.  No firearms were found.  SUF 61.  Deputies discussed with Carter the importance of complying with orders.  SUF 62.  Carter was released without any further incident.  SUF 63.

///

///

1

### C.     April 6, 2021 Incident

2     On April 6, 2021, Bodnar was on patrol near 54150 Kalsman Drive,

3 Whitewater, California.  SUF 95.  Bodnar observed a suspicious vehicle parked in an

4 alleyway behind the residence at the address 54150 Kalsman Drive, with a person

5 inside.  SUF 96.  The address has a driveway connected to the street.  SUF 97.  Bodnar

6 pulled up behind the vehicle, got out, and approached the vehicle.  SUF 98.  Bodnar

7 made contact with Carter, who was in the vehicle.  SUF 99.  Bodnar asked Carter for

8 his identification and registration.  *Id.*  Carter complied.  SUF 101.  After Bodnar

9 confirmed Carter's information, Carter was free to go.  SUF 102.  The stop took no

10 more than a few minutes.  SUF 103.

11

### D.     May 23, 2021 Incident

12     On May 23, 2021, Herwerk received a call concerning an altercation at 54150

13 Kalsman Drive, Whitewater, California.  SUF 127.  When he arrived, Herwerk

14 activated his BWC and recorded the entire investigation and interactions with

15 Plaintiffs and their neighbors.  SUF 128.  Herwerk ordered all parties to their

16 respective houses.  SUF 129.  Herwerk first interviewed Mendez, then Carter, and

17 then the neighbors.  SUF 130-132.  The investigation concluded that Carter had spat

18 at his neighbors and that one of the neighbors used a metal item to break a car

19 window.  SUF 133.  Herwerk counseled Carter and the neighbor about filing charges

20 against each other and that they both would go to jail.  SUF 134.

21

### E.     The Eviction

22     On July 20, 2021, Plaintiffs were served with an Unlawful Detainer Complaint,

23 Riverside Superior Court case number UDBA2100077, to vacate the property at

24 54150 Kalsman Drive.  SUF 157.  The unlawful detainer action was instigated by the

25 landlord.  SUF 158.  Plaintiffs failed to answer and a request for default was filed.

26 SUF 159.  Judgment was entered against Plaintiffs on August 16, 2021.  SUF 160.

27 A writ of possession of real property was executed on August 18, 2021.  SUF 163.

28 The writ of possession was provided to the County on August 27, 2021.  SUF 164.

A notice of eviction was prepared and served on Plaintiffs on September 1, 2021, which provided an eviction date of September 7, 2021.  SUF 165.  On September 9, 2021, the property was checked and found to be vacant.  SUF 166; Powers Decl. ¶ 9.

## V.    DISCUSSION

### A.    Legal Standards

#### 1.    Section 1983

42 U.S.C. § 1983 ("Section 1983") provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."

"Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (citation omitted).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

#### 2.    Fourteenth Amendment Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quotations and citation omitted).  An equal protection claim generally requires a plaintiff to show that he was intentionally treated differently because of his membership in an identifiable group or a constitutionally suspect class.  *See Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003); *see also*

*Taylor v. San Diego Cnty.*, 800 F.3d 1164, 1169 (9th Cir. 2015) (providing that the groups being compared must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified).  Although the groups being compared may be different in some respects, "they must be similar in the respects pertinent to the State's policy." *Taylor*, 800 F.3d at 1169.  Strict scrutiny is applied where an equal protection claim is based on membership in a suspect class or the burdening of a fundamental right.  *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1277 (9th Cir. 2005).  Intermediate scrutiny applies for certain other suspect classifications.  *Id.*  Otherwise, rational review applies.  *Id.* at 1277-78.

### 3.  Fourth Amendment Unlawful Search and Seizure

The Fourth Amendment[7] protects, *inter alia*, "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."  U.S. Const., amend. IV.  "The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest."  *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975).  "[T]he reasonableness of such seizures depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers."  *Id.*  In evaluating "the reasonableness of a particular search or seizure in light of the particular circumstances[,] . . . it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?"  *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968) (citing *Beck v. Ohio*, 379 U.S. 89, 96-97 (1964); *Carroll v. United States*, 267 U.S. 132 (1925)).

"The [reasonable-suspicion] standard takes into account the totality of the circumstances—the whole picture.  Although a mere hunch does not create

---

[7]  The Fourth Amendment applies to the States by way of the Fourteenth Amendment's guarantee of due process.  *Payton v. New York*, 445 U.S. 573, 576 (1980).

reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Navarette v. California*, 572 U.S. 393, 397 (2014) (citations and internal quotation marks omitted); *see also United States v. Sokolow*, 490 U.S. 1, 7 (1989). "[R]easonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for *particularized* suspicion." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (emphasis in original).

Consistent with the Fourth Amendment's protections, "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." *Sokolow*, 490 U.S. at 7 (quoting *Terry*, 392 U.S. at 30) (internal quotation marks omitted). This is referred to as a "*Terry* stop." "The officer, of course, must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. The Fourth Amendment requires some minimal level of objective justification for making the stop." *Id.* (citations and internal quotation marks omitted). Similarly, the police may undertake a traffic stop, subject to the reasonable-suspicion standard. *See Navarette*, 572 U.S. at 395-97 (citing, *inter alia*, *Terry*, 392 U.S. at 21-22). "Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (internal citations omitted).

### 4.   Qualified Immunity

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (citation omitted). To determine whether

qualified immunity applies, the Court must consider" (1) whether the facts shown make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. *Id.* at 232. For a right to be "clearly established," it must have been "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). This inquiry considers the law that existed at the time of the accused conduct, and while specific binding precedent is not required to show that a right is clearly established, case law must have placed the constitutional question beyond debate. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

     5.   <u>Municipal Liability</u>

A local government agency can be held liable under Section 1983 if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers, or where the action is made pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels." *Jackson v. Barnes*, 749 F.3d 755, 762-63 (9th Cir. 2014) (quoting *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 691 (1978)).

A plaintiff may also establish municipal liability by demonstrating that the alleged constitutional violation was caused by a failure to train or supervise municipal employees adequately. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). To state a failure-to-train claim, a plaintiff must allege: (1) he was deprived of a constitutional right; (2) the municipality had a training policy that amounts to deliberate indifference to the constitutional rights of persons with whom officials are likely to come into contact; and (3) his constitutional injury would not have happened had the municipality properly trained those officials. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007). "Similarly, a failure to supervise that is sufficiently inadequate may amount to deliberate indifference" to a plaintiff's

constitutional rights. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citation omitted). A municipality is deliberately indifferent when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390. "Where a § 1983 plaintiff can establish that the facts available to city policymakers can put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of *Monell* are satisfied." *Id.* at 396.

**B.    Plaintiffs' Motion for Summary Judgment**

Under this district's Local Rules, a party moving for summary judgment "must file a separate 'Statement of Uncontroverted Facts.'" L.R. 56-1. Plaintiffs have failed to file this separate statement.

Under Federal Rule of Civil Procedure 56 ("Rule 56"), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 45(a). "A party asserting that a fact cannot be . . . genuinely disputed must support the assertion by: (A) citing to particular parts of the materials in the record . . . ; or (B) showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 45(c)(1). Here, Plaintiffs have failed to cite to any admissible material in the record or to support their assertions with any evidence.

Because Plaintiffs have not followed this district's procedures for moving for summary judgment and have not met their initial burden in moving for summary judgment under Rule 56, the Court recommends that Plaintiffs' MSJ be denied.

///

///

///

**C.      Defendants' Motion for Summary Judgment**

1.      <u>Individual Capacity Claims for Violation of Equal Protection</u>

a.      *August 19, 2020 Incident*

Plaintiffs allege that Monges violated Plaintiffs' right to equal protection. SAC ¶¶ 2-6.  Plaintiffs contend that Monges was aggressive towards them and treated Plaintiffs rudely but treated their neighbor with politeness and fairness.  *Id.*

Defendants argue that Monges' actions during the entire encounter were professional and that there are no facts to show that he engaged in any discriminatory act or language.  Defs. MSJ at 10-11.

As explained above, Plaintiffs submit no evidence to support their claim. Thus, Monges' statement that he treated both sides professionally is undisputed.  *See* Monges Decl. ¶ 9.  The Court has reviewed Exhibit C, the footage of Monges' BWC during the August 19, 2020 incident.  *See* Defs. Ex. C.  Consistent with Monges' declaration, the footage shows that he treated both sides fairly and politely and did not exhibit any aggressive or discriminatory behavior towards either side.  Contrary to Plaintiffs' assertion that Monges stated that Plaintiffs need to move out, *see* Pls. Opp'n at 3, Monges said that moving out would be Plaintiffs "best bet" but that he would not tell Plaintiffs that they should move out.  *See* Defs. Ex. C.  Thus, Plaintiffs have not raised a genuine dispute that Monges violated their right to equal protection during the August 19, 2020 interaction.

Plaintiffs also allege that law enforcement would not file charges subsequent to the August 19, 2020 incident.  SAC ¶¶ 7-8.  Monges states in his declaration that he was not aware that Carter wanted to press charges until he was notified on July 15, 2021, and that he executed a declaration in support of arrest warrant and forwarded it to the District Attorney's office that same day.  Monges Decl. ¶¶ 14(1), 14(2).[8]  Plaintiffs do not point to or submit any evidence to refute Monges' statements

---

[8] The Monges Declaration includes two paragraphs numbered 14.  The Court will refer to the first paragraph 14 as 14(1) and the second paragraph 14 as 14(2).

or to support their position that their requests for assistance from the police following the August 19, 2020 incident were ignored. Even if Plaintiffs could point to evidence to support these assertions, this would not show that Plaintiffs were treated differently because of their race or membership in a suspect class.

As to Plaintiffs' allegation that Monges falsified a police report, Plaintiffs have not pointed to any evidence in response to Defendants' contention in their MSJ that there are no facts to support this claim. *See* Defs. MSJ at 11. Monges' Incident Report is consistent with Monges' declaration and BWC footage. *See* Defs. Ex. B. Even if Plaintiffs had submitted evidence to support this allegation, the filing of a false police report does not on its own amount to a constitutional violation, absent some other constitutional harm flowing from the filing of a false report. *See Reno v. Nielson*, 424 F. Supp. 3d 1045, 1059 (D. Haw. 2019). Plaintiffs' claim of violation of equal protection fails, and there is no other constitutional harm alleged and supported by evidence.

Because the Court finds no factual dispute that a constitutional violation occurred, the Court need not address Defendants' assertion of qualified immunity. The Court recommends that Defendants' MSJ be granted as to the individual capacity claim brought against Monges in relation to the August 19, 2020 incident.

           b.   *May 23, 2021 Incident*

Plaintiffs allege that when Herwerk responded to a dispute between Plaintiffs and their neighbors, Herwerk threatened Carter that if he wanted to file charges, he would go to jail. SAC ¶ 10. Plaintiffs also allege that the County failed to protect Plaintiffs after many calls for help to the police. *Id.*

Defendants argue that Herwerk did not use any discriminatory or disrespectful language. Defs. MSJ at 23-24. Defendants maintain that any allegations regarding the issuance or service of a restraining order are not properly brought against the County. *Id.* at 24.

///

17

The Court has reviewed the video footage from the BWC of Herwerk. *See* Defs. Ex. V. Herwerk declares that he activated the BWC upon arrival. Herwerk Decl. ¶ 20. According to that footage, which undisputedly covers Herwerk's interactions with Plaintiffs and their neighbors, Herwerk did not treat Plaintiffs differently from their neighbors. *See* Defs. Ex. V. Herwerk did not exhibit any discriminatory or rude conduct. *See id.* Herwerk was equally honest with both sides about his observations about their respective videos regarding car damage and the subsequent altercation and did not favor one side over the other. *See id.* As to Plaintiffs' allegation that Herwerk threatened Carter with jail, Herwerk stated that because both Carter and the neighbor spat towards each other, they could both be charged with assault if the other side asked to press charges. *See id.* Herwerk told Carter that Herwerk does not think anyone wants to go to jail today and that if one side would press the issue, then everyone would have to go to jail. *See id.* Herwerk gave the same explanation to Plaintiffs' neighbors, stating that everyone would get in trouble with respect to the altercation. *See id.* Thus, Plaintiffs have not raised a genuine dispute that Herwerk treated Plaintiffs differently from their neighbors because of Plaintiffs' race or gender.

As to events happening after the May 23, 2021 incident, Plaintiffs do not allege that any of the individual Defendants was involved. Moreover, Plaintiffs do not submit any evidence to refute Defendants' evidence that no constitutional violation occurred. And to the extent Plaintiffs are attempting to challenge the denial of their request for a temporary restraining order, there is no evidence that the County is responsible for the issuance of such orders.

Because the Court finds no factual dispute that a constitutional violation occurred, the Court need not address Defendants' assertion of qualified immunity. The Court recommends that Defendants' MSJ be granted as to the individual capacity claim brought against Herwerk in relation to the May 23, 2021 incident.

*///*

2. <u>Individual Capacity Claims for Violation of the Fourth Amendment</u>

   a. *March 30, 2021 Incident*

Plaintiffs allege that Bodnar, Rodriguez, and Herwerk unlawfully detained, arrested, and applied excessive force on Carter on March 30, 2021.  SAC ¶¶ 14-18.

Defendants argue that they instituted a lawful *Terry* stop and drew their firearms based on the information received from a code enforcement officer that the driver of the vehicle was armed.  Defs. MSJ at 16.

Bodnar declares that he received a report that the driver of a car matching the car driven by Carter was armed, and Bodnar followed and pulled over Carter.  *See* Bodnar Decl. ¶¶ 4-7.  Bodnar also observed the car passing a truck across double solid lines.  Bodnar Decl. ¶ 6.  Bodnar began recording the incident when he exited his vehicle and it remained on for the encounter.  Bodnar Decl. ¶ 10; Defs. Ex. N. The BWC footage shows that after Carter was pulled over, he left his vehicle with a cell phone in his hand.  *See* Defs. Ex. N.  Once Bodnar recognized Carter and saw that the object Carter was holding was a cell phone, Bodnar put his gun away and instructed his fellow officers to put their guns down.  *See id.*

The Court finds that Bodnar had reasonable suspicion to pull Carter over, both because of the report by the code enforcement officer and the crossing of the double solid lines.  The Court also finds that the initial response of Bodnar, Herwerk, and Rodriguez of pointing their firearms at Carter was reasonable, given the undisputed evidence that the code enforcement officer had reported that the driver had a weapon, and that Carter was holding an object when he exited the vehicle.  Moreover, in the BWC footage, Carter admitted that he was the individual that the code enforcement officer reported, though everyone came to understand after Carter was pulled over that Carter was recording the code enforcement officer with his phone and not brandishing a firearm.  *See id.*  Plaintiffs do not point to any evidence to dispute these facts.

*///*

19

As to the searches, Bodnar declares that he requested and obtained permission. Bodnar Decl. ¶ 18.  The BWC footage shows that Carter complied with the brief pat-down search, and when Bodnar explained that the other officers were going to check Carter's car, Carter responded "ok."  *See* Defs. Ex. N.  Aside from the necessary contact for the pat-down search, there was no use of force against Carter's person and Carter did not complain of any use of force during the interaction.  Plaintiffs do not provide evidence to dispute that Carter consented to the searches or was subject to any other use of force on his person.  And even if Carter had disputed that he consented to these searches, the Court finds that the searches were reasonable under the circumstances.

Plaintiffs argue that the officers did not have probable cause.  Pls. Opp'n at 3. However, there is no evidence that Carter was arrested in relation to this incident. *See* Herwerk Decl. ¶ 16; Bodnar Decl. ¶ 20; Rodriguez Decl. ¶ 17.  Thus, the probable cause standard does not apply.

In sum, the Court finds that there is no genuine dispute regarding a Fourth Amendment violation with respect to the interaction between Carter and Bodnar, Herwerk, and Rodriguez on March 30, 2021.  Because the Court finds no factual dispute that a constitutional violation occurred, the Court need not address Defendants' assertion of qualified immunity.  The Court recommends that Defendants' MSJ be granted as to the individual capacity claims brought against Bodnar, Rodriguez, and Herwerk in relation to the March 30, 2021 incident.

       b.    *April 6, 2021 Incident*[9]

Plaintiffs allege that Carter was unlawfully stopped by police on April 6, 2021. SAC ¶ 24.  Defendants contend that this was nothing more than a lawful *Terry* stop. Defs. MSJ at 19.

---

[9] Defendants mistakenly state in their MSJ that Herwerk was the officer involved in the April 6, 2021 incident.  *See* Defs. MSJ at 18-20.  However, the SAC, SUF, and declarations of Bodnar and Herwerk confirm that Bodnar was the officer.

According to the facts set forth in Bodnar's declaration, which must be treated as undisputed because Plaintiffs have not pointed to or submitted any evidence to refute the assertions within, this incident involved Bodnar approaching Carter's parked vehicle and asking for Carter's identification and registration. *See* Bodnar Decl. ¶¶ 23-27. Because Carter was already parked, there was no seizure involved with a stop of the vehicle. *See United States v. Judge*, 501 F.2d 1348, 1349 (9th Cir. 1974) (finding no seizure when driver "stop[s] his car voluntarily and [the police] in no way ordered or requested him to do so"); *United States v. Summers*, 268 F.3d 683, 686-87 (9th Cir. 2001) (finding constitutionally protected rights are not implicated when the encounter between a person and a police offer is voluntary and the driver of the vehicle stopped on his own volition).

Bodnar then requested Carter's identification and the vehicle registration. Bodnar Decl. ¶ 26. Carter provided his information and was free to go within a few minutes. Bodnar Decl. ¶¶ 28-29. There is no Fourth Amendment seizure where an officer questions an individual and requests the individual's identification. *See Florida v. Bostick*, 501 U.S. 429, 434-35 (1991) ("[W]hen officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, [and] ask to examine the individual's identification . . . as long as the police do not convey a message that compliance with their requests is required." (citations omitted)); *I.N.S. v. Delgado*, 466 U.S. 210, 216 (1984) ("[I]nterrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure."). Plaintiffs do not point to any evidence that Bodnar communicated to Carter in some way that Carter was not free to ignore Bodnar or was required to comply with Bodnar's requests. *See United States v. Washington*, 490 F.3d 765, 770 (9th Cir. 2007) (finding no Fourth Amendment seizure when officer approached parked car by foot and questioning was brief and consensual). Therefore, the Court finds that Plaintiffs have not raised a factual dispute that a Fourth Amendment search or seizure took place.

21

Because the Court finds no factual dispute that a constitutional violation occurred, the Court need not address Defendants' assertion of qualified immunity. The Court recommends that Defendants' MSJ be granted as to the individual capacity claim brought against Bodnar in relation to the April 6, 2021 incident.

   3.   <u>Municipal Liability Claims</u>

      a.   *Municipal Liability Claims based on Conduct by Monges, Bodnar, Herwerk, and Rodriguez*

As set forth above, the Court finds that there are no factual disputes regarding Plaintiffs' Section 1983 claims brought against Monges, Bodnar, Herwerk, and Rodriguez in their individual capacities.   Thus, there is no basis for Plaintiffs' municipal liability claims brought against the County for these underlying incidents. Plaintiffs have not pointed to any evidence to refute Defendants' claim that there has been no showing of fact that a constitutional violation was made pursuant to a municipal policy, practice, or custom. *See* Defs. MSJ at 12, 17, 24-25.  Accordingly, the Court recommends that Defendants' MSJ be granted as to Plaintiffs' municipal liability claims based on the incidents involving Monges, Bodnar, Herwerk, and Rodriguez.

      b.   *Municipal Liability Claim based on Eviction*[10]

Plaintiffs additionally allege a municipal liability claim against the County in relation to their eviction.  SAC ¶¶ 26-30.  Plaintiffs contend that the County sheriffs served a notice to vacate on September 7, 2021, while there were "Covid-19 eviction protection laws."  *Id.* ¶ 26.  Plaintiffs claim that the County discriminated against Plaintiffs due to their race.  *Id.* ¶¶ 27-28.

---

[10] Defendants request the Court take judicial notice of documents filed in Case No. UDBA21000777, an unlawful detainer action in the Superior Court of California, County of Riverside.  Dkt. No. 52 & Defs. Exs. W-FF.  The Court "may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).  Thus, the Court grants Defendants' request for judicial notice.

It is undisputed that an unlawful detainer action was initiated by Plaintiffs' landlord, who is not one of the Defendants and is a private party. Defs. Ex. W. It is undisputed that judgment was entered against Plaintiffs on August 16, 2021 after Plaintiffs failed to answer the complaint, and a writ of possession of real property was executed by the court on August 18, 2021. Defs. Exs. Z, CC. The County then prepared and served a notice of eviction on Plaintiffs on September 1, 2021. Powers Decl. ¶¶ 5-7. When the property was checked by the County on the eviction date, it was vacant. Power Decl. ¶ 9.

Thus, it is undisputed that the County's involvement was limited to preparation and service of the Notice of Eviction. Moreover, Plaintiffs apparently complied with the Notice of Eviction by vacating the premises before the County returned to enforce the writ of possession. Plaintiffs have not provided any admissible evidence that challenges the lawfulness of the County's actions in serving the Notice of Eviction. Specifically addressing Plaintiffs' equal protection claim, there is no evidence that the County's conduct was motivated by race or because any of the Plaintiffs are members of a suspect class.

As to Plaintiffs' arguments that the landlord did not submit proper proof to the state court and that Plaintiffs did submit a declaration and application for rental assistance, Plaintiffs do not submit any evidence to support these assertions. *See* Pls. Opp'n at 5. Moreover, even if Plaintiffs had submitted this evidence, the proceedings in the unlawful detainer proceeding did not involve the County. This evidence would not show that the County violated Plaintiffs' constitutional rights in enforcing what the County understood to be a valid state court judgment.

Accordingly, the Court recommends that Defendants' MSJ be granted as to Plaintiffs' municipal liability claim related to their eviction.

///

///

///

1

## VI.   **RECOMMENDATION**

For the reasons discussed above, **IT IS RECOMMENDED** that the District Court issue an Order: (1) accepting and adopting this Report and Recommendation; (2) granting Defendants' MSJ; (3) denying Plaintiffs' MSJ; and (4) dismissing this action with prejudice.


DATED:  February 13, 2024

_____/s/_____
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE


## **NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in Local Civil Rule 72 and review by the District Judge whose initials appear in the docket number. No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.